[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
The plaintiff brings this appeal applying for a reassessment of damages for the taking by the defendant of the plaintiff's property, the plaintiff claiming that the damages assessed are inadequate. The court had the benefit of appraisal reports and testimony from a number of witnesses, some of whom were experts.
The plaintiff is the owner of a tract of land in the Town of South Windsor consisting of about 82 acres. The property is bounded on three sides by public roads with access to Ellington Road to the West, Chapel Road to the North and Long Hill Road to the East. Its southern border abuts other privately-owned land. The property is zoned Rural Residential to a depth of 250 feet along Long Hill Road and Chapel Road, the residential portion consisting of 14 acres. The balance of the property including a strip providing access to Ellington Road, consists of about 68 acres and is zoned Industrial.
The day of taking was September 26, 1991. A portion of the property consisting of 9.412 acres was condemned for highway purposes. Damages were assessed by the Commissioner in the sum of $316,000.
The plaintiff's appraiser appraised the value of the land taken in the "Before" situation as follows:
 Residential $ 448,000 ($32,000 X 14 acres) Industrial $3,533,000 ($52,000 X 67.95 acres) CT Page 10985
Total $3,981,000
It was pointed out that the plaintiff's appraiser, on February 7, 1989, about a year and one-half before this taking, had appraised all the land, both residential and industrial at $25,000 per acre as compared to the $32,000 per acre for residential and to the $52,000 for industrial figures he now puts forward. He assessed the "After" value as $3,198,000, yielding a total Estimate of Damage of $783,000.
As previously stated the taking consisted of 9.412 acres. It also included the right to construct a driveway, the right to install a sedimentation control system, a drainage right, and a right to construct a metal beam rail.
After the taking the land will be divided into two parcels. Parcel A will contain 63.248 acres of which 10.2 acres is in a Residential Zone and 53.048 acres in an Industrial Zone. Parcel B, somewhat triangular in shape, will contain 9.29 acres, of which 2.54 acres is Residential and 6.75 acres is Industrial.
Parcel A will be adversely affected in its Residential area by a metal beam rail which will run along the front of one of its building lots. The remainder of the land in this parcel, both residential and industrial will not be adversely affected.
Parcel B will be reduced in value for two reasons: 1) Because the triangular area of land between the taking line and the land of Jarvis will probably be useful only for assemblage with the Jarvis lot as shown on the map. (See Exhibit B). 2) More significantly, the Industrial land remaining in Parcel B will be landlocked and lose substantial value because the zoning regulations prohibit access from Long Hill Road for any industrial use of that property. Zoning Regulations 3.4, 4.1.4, 4.7.2, 4.7.2.1., 4.7.2.10) The testimony that a variance or change of zone would be required to provide access to the industrial land in Parcel B was not disputed at trial or in the defendant's post trial brief. No testimony was presented on the probability of a variance or zone CT Page 10986 change, but some economically viable use of the land would probably be permitted. See Florentine v. Darien,142 Conn. 415, 423 (1955). Nevertheless, the uncertainty of access to the industrial land in Parcel B is a factor that substantially reduces its value after the taking. This area is also subject to other takings such as a drainage right, right to construct a driveway, and a sedimentation system, etc.
The defense produced evidence of the presence of wetlands on the subject property. Both the appraisers for the plaintiff and for the defendant acknowledged this to be the case, and both made adjustments which they felt reflected this condition.
The defense also introduced evidence of the presence of contamination on the premises. From the state of the evidence the matter does not appear to be a serious one. The area in which the contaminants are principally concentrated is colored yellow on Exhibit E and is shown as approximately oval in shape, measuring sixty-five feet at its long axis and forty feet at its short axis, according to the engineer who testified for the defendant. All of the contaminated area is located within the highway taking lines and approximately one half of the area of densest contamination is within the proposed travel portion of the highway. (See Exhibit 7) Although excavation and grading for this part of the highway has been in progress, as the panel observed in viewing the premises, the defendant presented no evidence of any special measures taken to remove any contaminated soil or otherwise safeguard the area against the danger of pollution. Because of this and our viewing of the premises we feel that this aspect of the case is of lesser consequence.
In Part A one building lot will be defaced by the placing of a metal beam along its front on Long Hill Road. The beam will run a distance of about 120 feet and can be made to curve around to the northerly edge of what could be a driveway. It is considered to be disfiguring and takes much from the value of the lot.
Because a portion of the area consists of wetlands, about twenty acres of the original tract CT Page 10987 according to the plaintiff's appraiser (Ex. B, p. 2) governmental approval would be required for its development. This would be a matter of some concern to a potential buyer.
 II
Ultimately the referee's determination of the value depends upon his considered judgment, taking into consideration the divergent views expressed by the witnesses and the claims of the parties. New Haven Savings Bank v. West Haven Service Development,190 Conn. 60, 69. He may reach his own conclusions as to value by weighing the opinions of the appraisers, the claims of the parties in view of all the circumstances presented in evidence at the hearing on value and his own general knowledge of the elements affecting value, selecting the most appropriate method of valuation under the facts found by him. Wronoski v. Redevelopment Agency, 180 Conn. 579, 596.
 III
Based upon our viewing of the property and the surrounding area, and considering all the evidence, the appropriate law, as well as our own knowledge of the elements constituting value, it is concluded that the damages are $443,000.
Judgment may enter for the plaintiff for the further sum of $127,000 in addition to the $316,000 already paid, together with interest on said further sum of $127,000 at the rate of 6.38% from the date of taking (September 26, 1991) to the date of payment, together with costs and an allowance of $3,000 as an appraiser's fee.
DAVID M. SHEA STATE TRIAL REFEREE
SIMON S. COHEN STATE TRIAL REFEREE
JOHN M. ALEXANDER STATE TRIAL REFEREE CT Page 10988